**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LATANYA YVETTE JOHNSON,

   *Plaintiff*,

v.                                  CASE NO. 13-CV-11319

COMMISSIONER OF           DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

   *Defendant*.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 12.)

Plaintiff Latanya Johnson was 43 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 30, 125, 131.) Plaintiff's employment history includes work as teller for six years and as a credit analyst for twelve years. (Tr. at 169.) Plaintiff filed the instant claims on November 6 and 8, 2010, alleging that she became unable to work on December 5, 2009. (Tr. at 125, 131.) The claims were denied at the initial administrative stages. (Tr. at 46-47.) In denying Plaintiff's claim, the Commissioner considered disorders of back, discogenic and degenerative, as possible bases for disability. (*Id.*) On November 1, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the application for benefits *de novo*. (Tr. at 13-25, 30-45.) In a decision dated November 23, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on December 7, 2011. (Tr. at 10-12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 22, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On March 25, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making

3

a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

5

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since February 4, 2011, the amended alleged onset date. (Tr. at 18.) At step two, the ALJ found that Plaintiff's disorder of the back was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ

found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a credit analyst. (Tr. at 22.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 19-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated in the emergency department of Sinai Grace Hospital on December 5, 2009, after she slipped and fell on black ice in the parking lot of a retail store and landed on her back. (Tr. at 203-50.)  X-rays of Plaintiff's lumbar spine and sacrum/coccyx showed "[n]o evidence of fracture or subluxation in the lumbar spine" and "[n]o evidence of fracture or dislocation involving the sacrum or coccyx." (Tr. at 222, 260, 262.)  "Mild degenerative changes" were seen at the L5-S1 level. (Tr. at 246, 260, 262.)  Plaintiff was discharged that same night. (Tr. at 238, 264.)

Plaintiff was treated by Yeva Soskina, M.D. from 2007 through 2011. (Tr. at 251-76, 285-88.)  On January 19, 2010, and MRI of Plaintiff's lumbar spine showed "Tri-level degenerative disc disease and disc displacements L3-L4 through L5-S1 [] most pronounced at the L5-S1 level with retrolisthesis of L5 on S1.  Pseudo-disc listhesis with end plate spondylosis and moderate facet arthropathy results in central canal and lateral recess stenosis with mild to moderate foraminal narrowing and abutment of the exiting right L5 nerve root and descending S1 nerve roots bilaterally." (Tr. at 258.)  There was "[n]o prevertebral or retrospinal soft tissue injury[,]" "[n]o sign of osseous stress injury or fracture[,]" and "[n]o traumatic disc herniation." (*Id.*)

7

Plaintiff underwent a consultative examination with Fouad Batah, M.D. on January 28, 2011. (Tr. at 277-84.) Dr. Batah noted that Plaintiff "was able to get on and off the table without difficulty" and was "able to walk on her toes and heels" and that her "gait is steady" but that she had difficulty bending and squatting due to pain. (Tr. at 279.) Dr. Batah diagnosed lumbar radiculopathy with mild spinal stenosis due to degenerative disc disease, obesity, and hypertension, and further opined that Plaintiff "will have problems with repetitive bending...long standing or walking" but that she "does not need a cane for ambulation or any walking aid." (Tr. at 280.)

On August 31, 2011, Dr. Soskina completed a Physical Residual Functional Capacity ("RFC") Assessment. (Tr. at 289-92.) Dr. Soskina indicated that he sees Plaintiff "every 2-3 month[s,]" that Plaintiff would need to recline or lie down in excess of the typical breaks time allowed in a full-time job (2-3 times for 15-20 minutes each), that she can sit for 30 minutes at a time, stand or walk for 20 minutes at a time, but that she can only sit for 2 hours total and stand or walk for 2 hours total in an 8-hour workday, that Plaintiff can only lift less than 10 pounds occasionally, and that Plaintiff would likely be absent from work three or four times a month. (Tr. 290-91.) Dr. Soskina also indicated that Plaintiff is "depressed" and that her depression would affect her ability to work. (Tr. at 291.)

Plaintiff indicated in her daily activity report that she is able to cook meals on a daily basis, iron, drive a car, go shopping in stores, by mail and by computer, handle her own finances, read, watch television, attend church, socialize with friends in person, on the phone, and on the computer. (Tr. at 181-83.)

8

**F. Analysis and Conclusions**

**1. Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to return to her past relevant work as a credit analyst. (Tr. at 22.)

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a [vocational expert ("VE")] in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of sedentary work. (Tr. at 19-21.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred by failing to properly evaluate the opinions of treating physician Dr. Soskina and examining physician Dr. Batah, thereby failing to

10

support the residual functional capacity determination by substantial evidence" (Doc. 10 at 13-17), "erred in analyzing the required factors in assessing Plaintiff's credibility" (*id.* at 17-19), and "erred in determining that Plaintiff could perform her past relevant work as a credit analyst." (*Id.* at 19-20.)

### a. Medical Sources

### i. Standards

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of

11

an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ

"failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain

13

specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

### ii. Analysis

Plaintiff contends that the ALJ "erred by failing to properly evaluate the opinions of treating physician Dr. Soskina and examining physician Dr. Batah, thereby failing to support the residual functional capacity determination by substantial evidence." (Doc. 10 at 13-17.) With regard to Dr. Soskina, the ALJ expressly and thoroughly considered Dr. Soskina's opinion and gave it "some weight" but found there was "not sufficient clinical evidence to support such great limitations such as missing more than three days of work per month." (Tr. at 21.) I first suggest that Dr. Soskina's conclusion that Plaintiff is not able to work is an opinion on the ultimate issue of whether a claimant is disabled, which is reserved to the Commissioner and therefore is not entitled to any weight. 20 C.F.R. § 404.1527(d)(3). Second, the ALJ properly analyzed and stated the reasons for his conclusions pursuant to the requirements of SSR 96-2p, 1996 WL 374188, at *5 (1996).

Finally, I suggest that the ALJ's reasoning is supported by substantial evidence. After Plaintiff's fall in December 2009, x-rays of Plaintiff's lumbar spine and sacrum/coccyx showed "[n]o evidence of fracture or subluxation in the lumbar spine" and "[n]o evidence of fracture or

dislocation involving the sacrum or coccyx." (Tr. at 222, 260, 262.) "Mild degenerative changes" were seen at the L5-S1 level. (Tr. at 246, 260, 262.) On January 19, 2010, and MRI of Plaintiff's lumbar spine detailed the degenerative disc disease and noted "central canal and lateral recess stenosis with mild to moderate foraminal narrowing and abutment of the exiting right L5 nerve root and descending S1 nerve roots bilaterally" but "[n]o traumatic disc herniation." (Tr. at 258.) These findings and Plaintiff's modest treatment of prescription medication do not show the presence of a disabling condition. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (modest treatment is inconsistent with a finding of disability); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I further suggest that Dr. Soskina's findings were properly rejected as internally inconsistent. Although Dr. Soskina indicated that Plaintiff can sit for thirty minutes at a time and that she can stand or walk for twenty minutes at a time, he also determined that she can only sit for two hours total and stand or walk for two hours total in an eight-hour workday. (Tr. 290-91.) Dr. Soskina's RFC Assessment did not mention any observations, test results or medical findings to support his conclusions. Under these circumstances, I suggest that the ALJ was free to discount the conclusions and committed no error in doing so. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (holding that ALJ properly discounted doctor's opinions on a check-off form which "did not cite clinical test results, observations, or other objective findings as a basis for determining [the plaintiff's] capabilities"); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of checklist forms which cited no medical evidence and provided little or no elaboration).

In the absence of medical findings or observations, it appears that Dr. Soskina's conclusions are based on Plaintiff's reported symptoms rather than medical test results. Conclusions such as

this are not medical evidence and therefore the ALJ is not required to accept an opinion based on such assertions. *See Masters,* 818 F. Supp. 2d at 1067. Moreover, Dr. Soskina's opinion regarding Plaintiff's alleged depression and its effect on her ability to work (Tr. at 291) are not supported by any evidence of record and are outside his field of expertise and, thus, would not be entitled to controlling weight. *See Johnson,* 652 F.3d at 651.

As to Dr. Batah, I suggest that the ALJ's findings are not in conflict with the doctor's opinion. Dr. Batah opined that Plaintiff "will have problems with repetitive bending," "long standing or walking," but that she "does not need a cane for ambulation or any walking aid." (Tr. at 280.) The ALJ's RFC findings stated that Plaintiff "cannot do any pushing/pulling, repetitive bending, or stooping." (Tr. at 19.)

I therefore conclude that the ALJ's decisions regarding the weight to give the medical source opinions was supported by substantial evidence.

**b.      Credibility Analysis**

Plaintiff also contends that the ALJ "erred in analyzing the required factors in assessing Plaintiff's credibility." (Doc. 10 at 17-19.) When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390

16

(6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or

about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

- (i) [D]aily activities;

- (ii) The location, duration, frequency, and intensity of . . . pain;

- (iii) Precipitating and aggravating factors;

- (iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

- (v) Treatment, other than medication, . . . received for relief of . . . pain;

- (vi) Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 20-21.) I suggest that substantial evidence supports the ALJ's findings for the reasons stated above under the medical source analysis. I also suggest that the ALJ's analysis is supported by Plaintiff's own statements that she is able to cook meals on a daily basis, iron, drive a car, go shopping in stores, shop by mail and by computer, handle her own finances, read, watch television, attend church, and socialize with friends in person, on the phone, and on the computer. (Tr. at 181-83.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

    **c.**     **Past Relevant Work**

Plaintiff argues that the ALJ "erred in determining that Plaintiff could perform her past relevant work as a credit analyst." (Doc. 10 at 19-20.) Plaintiff relies on her contention that she

18

would need to miss work three or four times a month and that the VE indicated that such absenteeism would preclude any competitive employment. (Doc. 10 at 19.) The ALJ found that Plaintiff was not fully credible and thus, did not include that limitation in the hypothetical. For the same reasons stated under the credibility and medical source analysis, I suggest the ALJ's findings were supported by substantial evidence.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: January 30, 2014                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 30, 2014                   By     s/Patricia T. Morris
                                                      Law Clerk to Magistrate Judge Binder